IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

DAVID STEBBINS, )
)
    Plaintiff, )
)
v. )
) Case No. 10-3305-CV-S-RED
RELIABLE HEAT & AIR, LLC, et al., )
    And )
)
RANDAL RICHARDSON, et al. )
)
Defendants. )

## MOTION TO CONFIRM ARBITRATION AWARD

Comes now Plaintiff David Stebbins, who respectfully submits the following motion to confirm an arbitration award on this case.

On the date of March, 20, 2011, I submitted a contract offer to Gary Allman, attorney for the defendants. This contract offer stated, among other things, the following:

1. We agree to refer all legal disputes – even those not related to this contract – to binding arbitration ("the arbitration clause").
2. If they do not accept the arbitration invitation within 24 hours of receiving it, I automatically win the relief requested, regardless of the merits of the case ("the forfeit victory clause").
3. The contract is accepted if 1) I attempt to communicate with them, 2) the defendants allow me to communicate with them, and 3) the defendants are not legally required to communicate with me on that issue. In other words, they are exempt from accepting this contract if they are required to let me communicate with them, on things such as discovery, but if the communication is not mandatory, then allowing me to communicate with them causes them to be bound. **This is a legally sound method of accepting a contract, as will be explained in the brief.**
4. The contract is *also* accepted if he initiates communications with me.

On the date of Wednesday, March 23, 2011, I called Gary Allman at his law office. Allman himself – not his secretary – answered the phone. I told him who I was and stated that I have a question regarding an issue with him that was related to my case against Reliable Heat &

Air, LLC, , but was not a formal discovery question, so he was not legally required to allow me to communicate with him; I just *wanted* him to.

Allman attempted to entertain me on the issue, but he said he was busy on the other line, and asked for permission to call me back in a few minutes. I declined the offer, because I had already gotten what I wanted: Symbolic acceptance of my contract.

On the morning of March 24, 2011, I submitted an arbitration invitation to Gary Allman. I sent it using two methods: One, I filed an arbitration case against net-ARB, Inc., an online arbitration firm that gives arbitration services for as little as $299. Second, I submitted a Submission to Arbitration form for the American Arbitration Association.

This arbitration was designed to arbitrate this employment discrimination dispute, which is why I am filing under this case law. He had until that time, the next day, to accept the arbitration invitation and email it back to me. However, he did not return it to me within the allotted time. Therefore, per the forfeit victory clause, I automatically win.

Wherefore, I respectfully pray that you confirm this arbitration award in the amount of $500,000.00, award costs incurred, and other relief that the court finds appropriate.

It is so humbly requested, on this 25th day of March, 2011.

*David Stebbins*
David Stebbins
1407 N Spring Rd, APT #5
Harrison, AR 72601
Phone: 870-204-6024

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **DAVID STEBBINS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 10-3305-CV-S-RED |
| **RELIABLE HEAT & AIR, LLC, et al.,** | ) |
| And | ) |
| | ) |
| **RANDAL RICHARDSON, et al.** | ) |
| | ) |
| **Defendants.** | ) |

### BRIEF IN SUPPORT OF MOTION

Comes now Plaintiff David Stebbins, who respectfully submits the following brief in support of his motion.

I will first assert my declarations of fact, and provide supporting exhibits.

1. On the date of March 20, 2011, I submitted an email to Gary Allman, attorney for the Defendants in this current action. See Exhibit A.

2. I admit that I am using Gmail, for this, whereas I normally us Yahoo. However, that is the *only* thing I changed, and he should have taken it as an indication that it was me. See Exhibit B. Notice, it says "From: David Stebbins <stebbinsd@gmail.com>" If I send it from yahoo, it typically says "From: David Stebbins <stebbinsd@yahoo.com>" Therefore, other than the different domain name, he had no excuse for getting confused. I quote the opinion of *Hubbert v. Dell Corp.* when I say, "Common sense dictates that because the plaintiffs were purchasing computers online, they were not novices when using computers. A person using a computer quickly learns that more information is available by clicking on a blue hyperlink." Likewise, common sense dictates that,

because the Allman was engaging in discovery with me over email, he was not a novice when using a computer. A person using a computer quickly learns that some people have multiple email addresses for back-up purposes, and they tend to reuse the same username, over and over again, so if two email address have the same username (in this case, stebbinsd) and the same first and last name ("David" and "Stebbins" respectively), and the only thing different is the domain name, it is probably the same person.

3. As you can see, the email contained a word document file attached to it. Again, this was routine. I consistently send discovery documents to him, over email. These documents are attachments to the emails I send him, and I often do not include a body in the email. Even if he did not know exactly what it was about, he should have considered the possibility that it was a discovery document, and read it accordingly.

4. As you can see from Exhibit C, the document clearly stated that it was a contract offer. This contract offer stated, among other things, the following:

   A) We agree to refer all legal disputes – even those not related to this contract – to binding arbitration ("the arbitration clause"). We must *both* do this, which establishes the element of mutuality of obligation, even though mutuality of obligation is not required in this case (see below).

   B) If they do not accept the arbitration invitation within 24 hours of receiving it, I automatically win the relief requested, regardless of the merits of the case ("the forfeit victory clause").

   C) The contract is accepted if

      i. I attempt to communicate with them,

      ii. the defendants allow me to communicate with them,

iii. the defendants are not legally required to communicate with me on that issue.  In other words, they are exempt from accepting this contract if they are required to let me communicate with them, on things such as discovery, but if the communication is not mandatory, then allowing me to communicate with them causes them to be bound.  This is a legally sound method of accepting a contract, as will be explained in the brief.

D) The contract is also entered into if he initiates communications with me for any reason that he is not legally required to communicate with me on.  For example, if he has a request for admissions, and his client admits even one fact, he does not **have** to respond to it; he can merely wait the 30 day time limit and allow all the answers to be admitted by default.

5. On the date of March 23, 2011, I called Gary Allman, identified myself, and clearly announced that I had a question that he was **not** legally required to answer, but I would appreciate it if he still entertained me on it.  Upon hearing all of this, Allman did not hang up the phone, immediately, but merely gave the excuse that he was busy on the other line.

6. To prove this, I cannot attach any kinds of exhibits, as the proof is in the form of an audio recording.  I thought it would be okay, considering that I am filing online, but no, the ECF only wants PDF documents to be filed.  So, I cannot simply file the audio recording of this phone conversation as an exhibit.  Instead, I will give you a link to a Youtube video, where I uploaded this audio recording.  I present, for the court's review, Exhibit D: http://www.youtube.com/watch?v=L3Lnj0gDpHg

7. As if the audio recording were not enough, Allman followed-up by sending me an email, apologizing for being busy.  See Exhibit E.  This means he performed the other

acceptance method – he initiated communications with me, and was not legally required to do so.

8. At 6:07AM on March 24, 2011, I submitted a form for Allman to fill out. It was a Submission to Arbitration for the American Arbitration Association. See Exhibit F. Per the forfeit victory clause in the contract that Allman accepted on his client's behalf, the day before, he was required to return it to me by 6:07AM on Friday, March 25, 2011.

9. I invited him to arbitrate this employment dispute, for a sum of $500,000 in non-categorized damages (what that means is, they will all be subject to the same tax rate; they will not be lost wages which will be subject to social security and medicare taxes, nor will they be "compensatory" damages, not subject to taxation at all. Instead, they are subject to income taxes, just like Punitive Damages are). See Exhibit G.

10. As of the time of this filing, Allman has not yet returned the Arbitration Submission form to me.

Now that I have gotten my assertions of fact out of the way, I now wish to establish why these facts are sufficient to establish a contract claim, as a matter of law.

1. In Missouri, the essential elements of a contract are: (1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. Baris v. Layton, 43 S.W.3d 390,396 (Mo. App. E.D. 2001).

2. I am competent to enter into a contract. Allman is competent to enter into this contract on the defendants' behalf, because he is their lawyer. A lawyer is a type of agent. Lawyers are expressly authorized to accept legal deals, such as settlement agreements, on their clients' behalf. I gave Allman several days to read over the contract and submit it to his client for review. If he did not do it, that is his fault.

1. The contract contains subject matter and legal consideration because it is an arbitration agreement. An arbitration agreement can stand alone as its own contract. 9 U.S.C. § 2. "[A]n **agreement** in writing to submit to arbitration an existing controversy arising out of [a contract evidencing a transaction involving commerce] shall be **valid, irrevocable, and enforceable**." When an *agreement* is valid, irrevocable, and enforceable, that is often referred to as a contract. Clearly, an agreement to arbitrate can stand alone as its own contract, especially when the equivalent litigation can otherwise qualify for federal court, as is the case, here.

2. It would be as if I went to a friend of mine and said "Hey buddy, if, God forbid, we ever have to sue each other, why don't we use arbitration to do it, and save time and money?" If we then reduce that agreement to writing, and the other three elements of a contract are valid, would that agreement hold water? If you answer yes to that question, you would concede that an agreement to arbitrate, in and of itself, contains subject matter and consideration.

3. Mutuality of obligation is not required for arbitration agreements in federal court. See *Southeastern Stud & Components, Inc. v American Eagle Design Build Studios, LLC*, 8th Cir., Case No. 08-3448.

4. Now, we move on to the issue that is most likely the biggest gray area in this case: Mutual agreement. Mutual agreement has three sub-elements: Offer, acceptance, and meeting of the minds.

5. I submitted the contract offer to him. That much is established.

6. Meeting of the minds is established, even though the defendant did not truly understand the nature of the issue, because the contract is clear and unambiguous. When a contract's

terms are clear and unambiguous, a meeting of the minds is established. See *Visiting Nurse Association v. VNAHealthcare, Inc.*, 8th Cir. Case No. 02-4150. Now, let us move on to what is probably the biggest question mark of this entire arbitration issue: Whether or not simply allowing me to communicate with them is a valid acceptance method.

7. Suppose I call a tech support hotline for assistance with my computer. I am informed, via a machine, that this assistance will cost me $49.00 per hour. Upon hearing this, I do not hang up the phone and proceed to speak with a technical support agent. Am I bound by that contract, because I did not hang up the phone? Yes, yes I am.

8. Allman could have rejected the contract by simply hanging up the phone. This does not require much effort. By comparison, you can buy some computer software, and there is a contract inside the packaging. You did not have access to this contract until after you had already bought the software. To reject the contract, you have to do more than simply hang up the phone. Instead, you must drive all the way back to the store, wait in line, and get a refund for the software. Are you still bound by that contract, if you don't perform that rejection method? Well, according to the United States Court of Appeals for the Eighth Circuit, yes you are! See *Davidson & Associates v. Jung*, 8th Cir., Case No. 04-3654.

9. So, the Eighth Circuit Court of Appeals allows for rejection methods to be a little bit out of your way, and a lot more out of your way than simply hanging up the phone. However, in this case, he also performed another acceptance method: Initiating communications with me! This is a valid method of acceptance. Why? Well, for starters, referring back to the tech support hotline hypothetical scenario, that involves the offeree initiating communications with the offeror. Alternatively, I could email a company's customer

support email address, and, before I click "submit" on their webmail form, I am shown a link that says "terms of use of this contract form." Upon clicking on that link, I find that I agree to a myriad of terms, simply by sending them this email! Then, imagine if I am fed up with these repeated contracts that I enter into, and try to go to their physical office to complain, but there is a sign on the door that says that entering the property causes me to be bound by these terms. That would, effectively, eliminate all methods that I could potentially use to communicate with them, would it not? Well, should I still be bound? Yes, I believe I should. But, what if I did not see it? Well, what *if* I did not see it? It was there, was it not? That is all that matters.

10. Now, I know what you are thinking: If you come onto the property, you are trespassing, so the owner of the property has the right to place conditions on giving you permission to enter. I agree. However, it should also work the other way around. I am unfamiliar with the official name of the doctrine, but it basically means that a court will, by default, consider all parties in a case as having perfectly mirrored rights. An employer is not required to hire me; I am not required to work for them. A store is not required to sell me anything; I am not required to shop there. A statute, such as the Americans with Disabilities Act, can change that, but, by default, a court will hold all parties in a case as having perfectly mirrored rights.

11. Well, per this "mirrored rights" doctrine, if a property owner is allowed to condition his approval of my trespassing on certain terms, then I should be allowed to place conditions on gracing him with my presence. If I have sufficiently communicated these conditions before I attempt to grace him with my presence, and then, he does not protest my attempt to grace him with my presence, then it is likewise assumed that he has accepted my

conditions for gracing him with my presence, over the phone.

12. Similarly, when Allman initiated the communications with me, it was assumed that he accepted my conditions for allowing him to trespass upon my email inbox. If I took him up on his offer to call me back, his voice would be trespassing upon my apartment. At that point, the sub-element of acceptance becomes a *lot* more straightforward.

13. For one final legal authority, I cite the Restatement (Second) of Contracts, Section 30. Subsection 1 clearly states that I have nearly infinite flexibility in stating an acceptance method. Subsection 2 does, indeed, state that an acceptance method needs to be reasonable under the circumstances, but it makes an explicit exception for when the language of the contract unambiguously states otherwise.

14. I read a comment on Section 30 of the Restatement of Contracts, on the website of [www.lexinter.net](www.lexinter.net), stating, "The offeror is the master of his offer.... The form of acceptance is less likely to affect the substance of the bargain than the identity of the offeree, and is often quite immaterial. But the offeror is entitled to insist on a particular mode of manifestation of assent. "

In conclusion, I believe that this contract – while unorthodox – is valid, irrevocable, and enforceable, because, unorthodox as it may be, I think you will be hard-pressed to find a single *real* counter-argument against this, other than simply saying "No no no! This doesn't count," and just leave it at that. I challenge either the court or the Defendant to pull some kind of miracle case law out of their butts; I do not think you are going to find one.

Just to make a point, allow me to address any potential affirmative defenses, in this case.

1. The contract is not unconscionable. It is neither procedurally, nor substantially unconscionable. See *Cicle v. Chase Bank*, 8th Cir., Case No. 08-1362. This contract is

made even less unconscionable by the fact that the one who it does not benefit has *more* bargaining power than the one who it does benefit. See *Metro Motors v. Nissan Motor Corporation*, 8th Cir. Case No. 02-1342.

2. Because it is not unconscionable, the affirmative defense of unilateral mistake is invalid. See Restatement (Second) Contracts, Sec. 153.

3. Unilateral mistake is sometimes taken as an affirmative defense if the other party had reason to know of the mistake. See Restatement of Contracts, Sec. 153. However, I firmly assert that the only reason the Defense did not understand the terms was because they did not read them. Although that is a possibility, and I may have had reason to know that he did not read the contract, it is still insufficient to establish a right of rescission. See *T.E.A.M. Scaffolding Systems, Inc. v. United Brotherhood of Carpenters and Joiners of America*, 8th Cir. Case No. 01-2341.

4. No false statement of material fact was given. Therefore, there is no misrepresentation, whether fraudulent or negligent. See *Stein v. Novus Equities Company*, Missouri Court of Appeals, Case No. ED90988.

5. Furthermore, there is no fraud, because no false statements of material fact were presented. See *City of Wellston, MO v. Jackson*, Missouri Court of Appeals, Case No. ED72313.

Simply put, this contract is valid and enforceable, and that is all there is it. My offer still stands for either the court or the defense to pull some kind of miracle law out of their butt that might actually refute this claim, but please do not just say "Um, no, this won't work," and expect me to leave it at that. I am willing to take no for an answer, but I am not willing to take "No, just because" for an answer.

Wherefore, I respectfully pray that you confirm the award in the amount of $500,000, award costs incurred, and other relief that the court finds appropriate.

It is so requested, on this 25th day of March, 2011.

*David S tebbins*
David Stebbins
1407 N Spring Rd, APT #5
Harrison, AR 72601
Phone: 870-204-6024
stebbinsd@yahoo.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **DAVID STEBBINS,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 10-3305-CV-S-RED |
| **RELIABLE HEAT & AIR, LLC, et al.,** | ) |
| And | ) |
| **RANDAL RICHARDSON, et al.** | ) |
| **Defendants.** | ) |

### CERTIFICATE OF SERVICE

I, Plaintiff David Stebbins, hereby certify that a true and correct copy of
    Plaintiff's Motion to Confirm Arbitration Award and incorporated brief
has been served on

Gary W. Allman
Missouri Bar #19921
P.O. Box 5049
Branson, MO 65615
Phone: 417-332-2800
Fax: 417-332-1008
garywallman@gmail.com
Attorney for: Defendants

by transmitting a copy via email transmission to garywallman@gmail.com, on the 17th day of March, 2011.

*David Stebbins*
David Stebbins
1407 N Spring Rd, APT #5
Harrison, AR 72601
Phone: 870-204-6024