IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

DAVID STEBBINS,            )
                           )
    Plaintiff,         )
                           )
v.                         ) Case No. 10-3305-CV-S-RED
                           )
RELIABLE HEAT & AIR, LLC, et al., )
    And                )
                           )
RANDAL RICHARDSON, et al.  )
                           )
Defendants.                )

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Comes now Plaintiff David Stebbins, who respectfully submits the following motion for partial summary judgment.

### Statement of Uncontroverted Facts

In compliance with Local Rule 56.1, I hereby submit the following statement of uncontroverted facts.

1. I was employed by the defendants as a customer service representative.
2. The defendants terminated the employment relationship.
3. Said termination was deliberate.
4. I was terminated for being rude to the customers.
5. I was scheduled as a full-time employee.
6. Despite that, I was sent home early every day, for being rude to the customers, to the point where it was a de facto part-time job. This was not admitted, per se, but it is considered to be admitted, due to a technicality, as I will explain later on.
7. I have Asperger Syndrome, which makes me tactless. Furthermore, the defendants believed me when I told them that I have Asperger Syndrome, as well as its symptoms; they merely did not

think that it was a disability, but rather, a mere personality defect, akin to having a bad temper, not something that is entitled to accommodation, per ADA law.

8. The defendants knew that failing to provide reasonable accommodations for a disability was against the law.

9. Despite this knowledge, the defendant failed to provide reasonable accommodations that he can account for.

10. The defendants' termination of our employment relationship deprived me of my ability to afford to pay my debts (this is another issue that is admitted technically, rather than a true, genuine admission, as explained later).

11. Because of my inability to pay my debts, debt collectors began to harass me.

12. Said harassment literally caused me to contemplate suicide.

13. The lost wages suffered as a direct result of my termination equals $16,000 per year.

14. I will likely be out of work for approximately five years.

Therefore, I am entitled to summary judgment on the following issues:

1. An employment relationship existed (as opposed to, being an independent contractor).

2. I have Asperger Syndrome.

3. I was terminated for a reason that would likely not have been present, but for me having Asperger Syndrome.

4. The defendants made no attempt, whatsoever, to accommodate the disability.

5. The defendants knew that terminating a disabled person without accommodating the disability was illegal, thus giving rise to punitive damages.

6. I had reduced work hours, thus constituting an adverse employment action for the purposes of proving a hostile work environment.

7. I suffered grave emotional distress because of this termination.

Upon this motion for partial summary judgment being granted, only one question will remain

for trial: Did the defendants know, or did they have no excuse for not knowing, that Asperger Syndrome was a disability?

If I can prove that the answer to that question is "yes," that will mean that the defendants' actions constituted discrimination.

Upon proving that the actions were discriminatory, that will prove that the actions were intolerable in polite society. This will establish the one final criterion for my claim of negligent infliction of emotional distress.

Wherefore, I respectfully pray that you summarily judge all the other elements, besides those two unanswered questions, in my favor, award costs incurred, and award other relief that the court finds appropriate. It is so humbly requested, on this 1st day of August, 2011.

David Stebbins
1407 N Spring Rd, APT #5
Harrison, AR 72601
Phone: 870-204-6024
stebbinsd@yahoo.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DAVID STEBBINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 10-3305-CV-S-RED ) |
| RELIABLE HEAT & AIR, LLC, et al., And | ) ) ) |
| RANDAL RICHARDSON, et al. | ) ) |
| Defendants. | ) ) |

## BRIEF IN SUPPORT OF MOTION

Comes now Plaintiff David Stebbins, who hereby submits the following brief in support of his second motion for partial summary judgment.

1. To win a claim of wrongful termination in violation of ADA law, I must prove the following:

   A) An employment relationship existed between the Plaintiff and the Defendant(s), who assumed the roles of employee and employer, respectfully.

   B) Said employment relationship was terminated by the employer/defendant.

   C) I was, or should have been, regarded as disabled by the employer. See 42 U.S.C. § 12102(1)(C).

   D) Despite this disability, I can perform the essential functions of the job, so long as I have a reasonable accommodation to help me, and

   E) The defendants failed to provide reasonable accommodations.

   F) To recover punitive damages, I must prove that the defendant knew, or should have known, that the termination would violate the law. See *Kolstad v. American Dental Assn.* (98-208) 527 U.S. 526 (1999) 139 F.3d 958.

2. To win a claim of hostile work environment, I must prove the following:

A) I was subjected to at least one adverse employment action, or AEA for short. It is my belief that being sent home early and receiving fewer hours, thus earning fewer wages, is an AEA.

B) I was, or should have been, regarded as disabled by the perpetrator of the AEA. See 42 U.S.C. § 12102(1)(C).

C) The reason that I was subjected to the AEA would likely not have been present, but for my disability, or would likely not have been present if a reasonable accommodation for my disability was in place.

D) Reasonable accommodations were not provided.

E) To recover punitive damages, I must prove that the defendant knew, or should have known, that the AEA would violate the law. See *Kolstad v. American Dental Assn.* (98-208) 527 U.S. 526 (1999) 139 F.3d 958

3. To win a claim of negligent infliction of emotional distress, the plaintiff must prove the following:

    A) The defendants performed one or more action.

    B) Said actions are intolerable in polite society. It is my firm belief that employment discrimination is intolerable in polite society.

    C) Said actions proximately caused emotional distress, and

    D) Said emotional distress was medically significant. See *Snelling v. Publishers Clearing House, Inc.,* 8th Circuit Court of Appeals, case #03-2195. It is my firm and humble belief that contemplation of suicide constitutes medically significant emotional distress.

4. For reasons that will soon be established, all of the above-mentioned criteria have been conclusively established, except for the following:

    A) I was, or should have been, regarded as disabled.

    B) The actions that triggered the emotional distress constituted discrimination, thus making them intolerable in polite society.

5. I still intend to prove these final two elements. However, in the meantime, I wish for the court to review the following declarations of fact and summarily judge everything else in my favor.

6. I was employed by the defendants as a customer service representative. See Exhibit A, Admissions #1 and #4. He denied that I was a customer service representative, but the job description he gave was *that of* a customer service representative. This is the equivalent of me asking him to admit that I was employed as a janitor, and he replies saying "Deny, you were employed to keep the premises in a sanitary condition."

7. The defendants terminated the employment relationship. See Exhibit A, Admission #8.

8. Said termination was deliberate. See Exhibit A, Admission #25.

9. I was terminated for being rude to the customers. See Exhibit A, Admission #8

10. I was scheduled as a full-time employee. See Exhibit A, Admission #6

11. Despite that, I was sent home early every day, for being rude to the customers, to the point where it was a de facto part-time job. See Exhibit A, Admission #7. Do you remember, earlier, when I said that this was admitted on a technical basis? Well, the defendants testified to a lack of knowledge on the subject matter. They *can* do that. See Fed. R. Civ. P. Rule 36(a)(4). However, this rule clearly and unambiguously states that "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny **only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.**" A party can not merely use his lack of knowledge as a crutch, without even so much as attempting to make a reasonable inquiry into the matter. To prove this, I will cite the persuasive precedent of *Loudermilk v. Best Pallet Company, LLC*. This was appealed to the United States Court of Appeals for the Seventh Circuit, and has the Seventh Circuit case number of 10-1846. The issue on appeal did not concern the requests for admissions, so instead, I will copy and paste an excerpt from the District Court decision.

"If the party does not object, its answer must either admit the matter, deny the matter, or "state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). A party may not "merely rely on his lack of personal knowledge when responding to requests to admit." Lambert, 2002 U.S. Dist. LEXIS 14789, at *2. In some circumstances, Rule 36 requires a party to describe the specific reasons why, after its reasonable inquiry, the party still lacked knowledge sufficient to admit or deny the matter. See Cada v. Costa Line, Inc., 95 F.R.D. 346, 347--48 (N.D. Ill. 1982) ("Statements of inability to admit or deny are of course permitted by Rule 36, but they must be supported by specific reasons."); United States v. Am. Tel. & Tel. Co., 83 F.R.D. 323, 333 (D.C.C. 1979)."

12. As Exhibit A, Admission #7 clearly shows, the defendants did *not* state that they have made reasonable inquiry, *or* that the information it knows or can readily obtain is insufficient to answer it. Therefore, their answer is evasive and incomplete. Therefore, officially, they did not answer the request for admission at all. See Fed. R. Civ. P. Rule 37(a)(4), "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Therefore, this answer is, technically, admitted. See Fed. R. Civ. P. Rule 36(a)(4), holding that a matter is admitted by default if the adverse party does not respond, which, in this issue, they technically have not.

13. Even if the defendants stated that they made reasonable inquiries and were still unable to determine the factual accuracy of the requested admission, they would be lies. Even if he did not have the punch card that I filled out, detailing the hours that I worked, he can still look to his company's bank records. He can find the bank transaction where he paid me the one paycheck I pulled from him. When he sees how much he paid me, he can divide that money by $8, since my wages were eight dollars per hour. The result of that math problem would yield the number of hours I worked. When the number of hours I worked would clearly show that, although I was scheduled as a full-time employee, my hours reflected part-time work. This is called "thinking." The defendants should try it, sometime.

14. I have Asperger Syndrome, a disability that causes me to be tactless. Furthermore, the

defendants believed me when I told them that I have Asperger Syndrome, as well as its symptoms; they merely did not think that it was a disability, but rather, a mere personality defect, akin to having a bad temper, not something that is entitled to accommodation, per ADA law. See Exhibit B, Paragraphs #7 and #8.

15. The defendants knew that failing to provide reasonable accommodations for a disability was against the law. See Exhibit C, Page 3 (more specifically, see the section entitled "Americans with Disabilities Act," where the company unequivocally outlines its policy regarding ADA law).

16. The defendant failed to provide reasonable accommodations... at least, none that are admissible as evidence. The defendants originally claimed that they provided a reasonable accommodation, but, when pressed for details, it was revealed that said evidence is inadmissible. The reasonable accommodations offered to me took place in an EEOC mediation, which is inadmissible in court. See Fed. R. Civ. P. Rule 68(b) "Evidence of an unaccepted offer [for judgment] is not admissible except in a proceeding to determine costs." Furthermore, see my motion to strike, Document #58 in this case.

17. No other accommodations, besides those that are inadmissible, were provided. See Exhibit F.

18. In the month of November 2009, I approached my mother, Rita Stebbins, at her place of occupation at the time, and sought her help in locating a therapist. See Exhibit D, Admission #1. They have technically admitted to this fact via the same technicality present in paragraph #11 of this brief. Furthermore, even if they *claimed* to have made reasonable inquiry, it would have been a lie. I listed my mother as a witness, complete with all her contact information, in the 26(a) initial disclosures. They could have summoned her to a deposition to investigate that claim.

19. The reason I wanted this therapist is because, not ten minutes prior, I was literally preparing a suicide note. See Exhibit D, Admission #2. The same technicalities as described in paragraph

#18 apply, here.

20. The same technicalities as described in paragraph #18 apply, here. The reason I was preparing that suicide note is because I was being harassed by creditors and debt collectors. See Exhibit D, Admission #3. The same technicalities as described in paragraph #18 apply, here.

21. These debt collectors were aggrieved by my inability to pay my debts. See Exhibit D, Admission #4. The same technicalities as described in paragraph #18 apply, here.

22. My inability to pay these debts stemmed directly from my unemployment. See Exhibit D, Admission #5. The same technicalities as described in paragraph #18 apply, here.

23. My unemployment was caused by the Defendants' very termination of my employment, spoken of in the complaint. See Exhibit D, Admission #6. The same technicalities as described in paragraph #18 apply, here.

24. The lost wages suffered as a direct result of my termination equals $16,000 per year. See Exhibit G. Notice, this is merely the request for admissions that I served on the Defendants. However, they did not answer that claim within the 30-day time limit. Therefore, all those facts are admitted by default. See Fed. R. Civ. P. Rule 36(a)(4).

25. I will likely be out of work for five years, effective June 2009. See Exhibit H, another request for admissions that was ignored by the Defendants, and thus are admitted by default.

26. If I can prove at trial that the defendants knew, or should have known, that Asperger Syndrome was a disability, not a mere personality trait, I will then be entitled to relief in the amount of $80,000 in lost wages. Furthermore, since the defendants knew that termination and adverse employment actions leading up to that termination, of a disabled employee, without even *attempting* to accommodate the disability, were illegal, I will be entitled to $50,000 in punitive damages for both the termination, and hostile work environment, for a total of $100,000 in punitive damages.

27. Furthermore, assuming that I can meet the standards specified in paragraph 26, the actions will

constitute employment discrimination, an action which is intolerable in polite society, thus giving me the final criterion in my claim of negligent infliction of emotional distress, meaning that I will be entitled to $50,000 in emotional distress damages, for a grand total of $230,000, $80,000 of which is lost wages.

Wherefore, I respectfully pray that you summarily judge these facts in my favor, and find that only one question – whether the defendants knew, or should have known, that Asperger Syndrome was a disability – remains for trial.

It is so humbly requested, on this th day of August, 2011.

*David Stebbins*
David Stebbins
1407 N Spring Rd, APT #5
Harrison, AR 72601
Phone: 870-204-6024
stebbinsd@yahoo.com

CERTIFICATE OF SERVICE

I, Plaintiff David Stebbins, hereby certify that a true and correct copy of my motion for partial summary judgment was served on Gary Allman, attorney for the Defense, by emailing a copy to garywallman@gmail.com on the th day of August, 2011.

*David Stebbins*
David Stebbins
1407 N Spring Rd, APT #5
Harrison, AR 72601
Phone: 870-204-6024
stebbinsd@yahoo.com