IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

DAVID STEBBINS, )
)
    Plaintiff, )
)
v. )
) Case No. 10-3305-CV-S-RED
RELIABLE HEAT & AIR, LLC, et al., )
    And )
)
RANDAL RICHARDSON, et al. )
)
Defendants. )

## RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who respectfully submits the following response in opposition of the Defendant's motion for summary judgment.

Defendant's motion for summary judgment should be denied because the facts that he believes to be uncontroverted are either controverted, or proven in the Plaintiff's favor.

## STATEMENT OF CONTROVERTED FACTS

1. Randal Richardson's affidavit is not proof of anything other than what we agree to. Unless I admit to those paragraphs, the statements made in those paragraphs must also be supported by further evidence. The Defendants could have sent me a request for admissions, asking me to admit to the various paragraphs in that affidavit, but he did not.

2. Paragraph seven (7) of the Defendant's Statement of Uncontroverted Facts is true insofar as it states that the Plaintiff was deliberately terminated. However, it is not true insofar as it states that the Plaintiff was terminated after three or four days of work.

   (a) Defendants have admitted that I was employed for one week, from the dates of May 26, 2011 to June 1, 2011 (see Defendant's Response to Admissions, Para 8).

3. I deny Paragraph #9 of the Defendant's Statement of Uncontroverted Facts. I told Defendant about my Asperger Syndrome on the very *first* day of employment. See Complaint, Document #7.

    (a) In furtherance of this statement, Defendant relies on his Affidavit, which I have already explained how that does not prove anything.

    (b) Defendants also rely on my response to Defendant's First Request for Admissions. However, the first paragraph of that request for admissions asked me to admit that I did not inform the Defendant of my disability prior to *starting* employment. If I still informed him of my disability on the *first day* of employment, that is still "prior to the start" of employment.

    (c) Defendants also rely on their Response in Opposition to my Motion for Partial Summary Judgment. However, a response in opposition has absolutely no evidenciary value, other than stopping a motion for summary judgment from being granted.

    (d) The Defendant never denied that I informed him of my Asperger Syndrome on the first day of employment in his answer. He denied it later, but he did not deny it in his answer. Therefore, because they did not deny it in their answer, it is admitted, automatically. See Fed. R. Civ. P. Rule 8(b)(6).

4. Paragraph ten (10) of the Defendant's Statement of Uncontroverted Facts is untrue. I attempted to be as courteous as I could to the customers; it just wasn't enough.

    (a) I wish I did not have Asperger Syndrome. Defendants have no idea what I would give to be normal. I do not like having to use Asperger Syndrome as a crutch for my social awkwardness, but sometimes, I just have no choice.

(b) When as I stated that the customers would just have to "get used to it," that did not mean that I was not attempting to change it. What I meant was, insofar as my attempts were unsuccessful, the customers would have to meet me in the middle regarding my attempts at improvement.

(c) Defendants never denied in their answer that I made no attempts at improvement. Therefore, the fact that I made attempts at improvement is admitted by default. See Fed. R. Civ. P. Rule 8(b)(6).

5. Paragraph eleven (11) is untrue insofar as I offered no suggestion of any reasonable accommodation. This statement is unsupported by evidence. The exhibit on which the Defendant relies does not state that I offered no suggestions; it merely stated that customer satisfaction was not an essential function of the job. Furthermore, it is untrue, as the Defendant asserts later in the brief, that I did not request or suggest a job reassignment as a reasonable accommodation.

(a) In their answer, Defendants did not assert that I offered or suggested no reasonable accommodations. Therefore, this defense is waived. See Fed. R. Civ. P. Rule 8(b)(6).

## LEGAL DISCUSSION

Plaintiff agrees that, when granting a motion for summary judgment, the Court should view the facts in a light most favorable to the adverse party and draw all inferences thereof in favor of the adverse party.

### Discrimination does not have to be solely based on disability.

Plaintiff disagrees that, under the Americans with Disabilities Act, it is only unlawful for an employer to terminate a disabled employee *solely* because of his disability. The emphasis is on the word "solely." If the disability played any role, whatsoever, in the decision to terminate,

that should be sufficient to show discrimination. The statute only requires discrimination to be "on the basis of disability," not "solely on the basis of disability." see 42 U.S.C. Sec. 12112(a). Using the canon of statutory interpretation of *in pari materia*, I ask that the court look to the application of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act 1967. Those statutes do not require discrimination to be based *solely* on the protected class, do they? Why should the Americans with Disabilities Act be any different?

### Plaintiff was terminated solely by reason of his handicap.

Even if the Plaintiff must be terminated "solely" by reason of his handicap, Plaintiff was, in fact, terminated for that reason.

By the Defendant's own admission, Plaintiff was terminated "because of his inability to properly perform the essential functions of his job in that he was rude, abrasive, and tactless to customers." However, that *is* the handicap. What the Defendant is suggesting is the equivalent of "Plaintiff was not terminated because of his deafness; he was terminated for his failure to follow the instructions I gave to him, orally."

### Major life activity is hindered.

Defendant is wrong in that an outward manifestation of tactlessness does not substantially limit one or more major life activities. It substantially limits the major life activity of communicating, such as making friends, and (dare I say it) impressing employers and convincing them to hire me. Communicating is a major life activity. See 42 U.S.C. Sec. 12102(2)(A).

Defendants argue that I have offered no proof that my Asperger Syndrome is serious enough to be considered a disability. To the contrary, I *have* established the level of seriousness involved. My behavior while on the job – to which the Defendants themselves agree – should stand alone as proof that the disability is rather serious.

Remember, the definition of a disability should be construed in favor of broad coverage, according to the ADA Amendments Act of 2008. For example, if the disability only limits major life activities in episodes, it is sufficient to establish a disability. See 42 U.S.C. Sec. 12102(4)(D). By the Defendants' own admission, several severe episodes of my Asperger Syndrome occurred during employment.

**Being tactless does not make a person otherwise qualified.**

Defendant erroneously argues that Plaintiff was not otherwise qualified to perform the job. However, by the Defendant's own admission, the only reason I was not qualified is because the customers were offended and/or uncomfortable about my disability. As I have already discussed in my motion for declaratory judgment, Document #136, this is *not* a bona fide occupational qualification, because customer satisfaction is not an "essential function" of any job.

Defendant has cited persuasive precedent that being tactless to the customers, even when having Asperger Syndrome, may prove an employee to not be "otherwise qualified." However, this conflicts with the *binding* authority which I have already shown you. Specifically, I am referring to the administrative interpretations, which are binding on this court by way of the United States Supreme Court case of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ("*Chevron*").

Furthermore, Defendant is citing case law from a completely different type of profession. In the Jakubowski case, the Plaintiff was attempting to be a doctor. I was only employed as a customer service representative. As a doctor, good communication skills goes to the core of the job, like having good vision is necessary to be a pilot, or not being deaf is essential to being a disc jokey. As a doctor, patients are paying you, not just to talk to them, but to actually connect

with them, emotionally, and understand their problems! A person with Asperger Syndrome being a doctor is like a whose jaw is wired shut from surgery being a disc jockey.

As a customer support representative, I only require *competent* communication skills, which I do have. As a customer support representative, all I was required to do was take down the complaints of customers who needed air conditioner maintenance, and dispatch technicians to the customers' locations to fix the air conditioners. I was doing *that* just fine. As a doctor, each piece of communication must be customized to each patient's needs, and that requires actually *understanding* what each patient's needs are; as a customer service representative, my tasks were largely ministerial in nature. Customers just found my tactlessness a bit unnerving, but, unlike with a doctor, that does not mean that I cannot do it.

To help give you a better idea of what I am talking about, allow me to turn, once again, to the case of Diaz v. Pan Am. World Airways, Inc. 442 F.2d 385 (5th Cir. 1971). In that case, the Defendants attempted to assert that gender was a "bona fide occupational qualification" for being a flight attendant. However, a flight attendant's relationship with each customer is not customized to that customer's needs. It is not within the flight attendant's job description to understand and connect emotionally with each customer and their problems, and to help solve those problems. Therefore, the Fifth Circuit held, a few ticked off customers were not a sufficient grounds to terminate an employee, so long as the customers' frustrations resulted primarily from the protected class.

The same applies in this case. The tasks which I were to perform were largely ministerial in nature, and they did not require a specific understanding of each customers' personal psyche. Therefore, while good communication skills might be a BFOQ to be a doctor, it is not a BFOQ to be a customer support representative. To do that, my communication skills need merely be

"enough," and Defendants have offered no proof that I have failed to meet that requirement.

**Jakubowski had other reasons for being terminated.**

Defendants admit that I was only terminated for being tactless to customers. Upon reading the Sixth Circuit opinion in the Jakubowski case, I find the following near the top of page three:

> "Additionally, an attending physician, Dr. Jeffrey Morgeson, observed that when working with patients, Jakubowski had poor organizational skills, skipped standard procedures in his examinations, and performed procedures incorrectly."

These are things that, at least to my personal knowledge, are not caused by Asperger Syndrome. Therefore, these reasons – the reasons that Christ Hospital gave in addition to the lack of communication skills for the termination – are not related to Asperger Syndrome. Therefore, that was a legitimate reason to terminate someone.

**No specific incidents are recorded.**

Even assuming that good communication skills is a bona fide occupational qualification, unlike in the Jakubowski case, Defendants in this case have cited no *specific incidents* of customers being offended. I intend to use that as evidence at trial, that he lacks any real details, and thus, the Defendant's defenses are just blanket claims. One cannot rely on mere blanket accusations, without any evidence to back them up, when in a discrimination case, or any lawsuit for that matter, and I intend to use that at trial to attack the credibility of the Defendant.

**Defendant must prove that accommodations are objectively unreasonable.**

Defendants argue that the Plaintiff holds the initial burden of proving that the accommodations requested are objectively reasonable.

To the contrary, the burden of proof lies on the Defendants to prove that no reasonable accommodation can be provided that is objectively reasonable. No case law is needed in this

case; it is written into the plain text of the statute. See 42 U.S.C. Sec. 12182(a)(1)(A)(iii), which states that an employer discriminates if failing to take reasonable steps to ensure the full participation of a disabled employee "unless the [employer] **_can demonstrate_** that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." As the plain text of the statute clearly shows, the employer is the one who must demonstrate that any accommodations are objectively unreasonable. Remember, the plain text of the statute is to be turned to, first and foremost, in all cases. See *Connecticut Nat'l Bank v. Germain*, 112 S. Ct. 1146, 1149 (1992)

Defendant states that another employee would have to be hired to constantly monitor Plaintiff. They have yet to prove this.

In response to that argument, Defendant claims "[t]his logic is flawed, particularly in light of the fact that Plaintiff has not established that he was otherwise qualified to properly perform the job, with or without reasonable accommodations." However, Defendant has not stated that customer satisfaction is an *essential* function of the job. In Paragraph two (2) of the Defendant's affidavit, Defendant claimed stated that the essential functions of the job were "answering the business phone, keeping written notes of calls and communicating with customers and dispatching crews to jobs." He did *not* say that the essential functions of the job are being polite and courteous to the customers. He should not be given the opportunity to come waltzing in at the eleventh hour with this argument, as it prejudices me.

Furthermore, as I have already established in my motion for declaratory judgment (Document #136), customer satisfaction is *not* an essential function of any job. It might be an important one, but it is not an *essential* one. I have cited both Fifth Circuit case law, and also administrative interpretations in support of my case. Courts are required to defer to

administrative interpretations when deciding issues of law. See *Chevron*. Sixth Circuit case law, such that the defendant cites, may be persuasive, but administrative interpretations are binding, and do I even *have* to cite legal authority showing that binding authority overrides persuasive authority?

**Plaintiff does not have to request specific accommodations.**

Defendant admits that "Plaintiff could properly perform a different job that didn't require customer relations or customer interaction but such a job or accommodation was not suggested or requested." Defendants have not cited any evidence in support of that statement.

Even if they did, The bottom line is that I was not required to suggest specifically that accommodation. Once again, deferring to administrative regulations, using the *Chevron* precedent, please follow this link: http://eeoc.gov/facts/accommodation.html

In it, you will find the following information:

-------------------------------------------------------------------------------------------------------------------

### Requesting Reasonable Accommodation

1. How must an individual request a reasonable accommodation?

    The individual must let the employer know that s/he needs an adjustment or change at work for a reason related to a medical condition. An individual may use "plain English" and need not mention the ADA or use the phrase "reasonable accommodation." Requests for reasonable accommodation do not need to be in writing, though an employer may choose to write a memorandum or letter confirming the request.

2. What must an employer do after receiving a request for reasonable accommodation?

    When the **disability and/or the need for accommodation is not obvious**, the employer may ask the individual for **reasonable documentation** about his/her disability and functional limitations.

    The employer and the individual with a disability should **engage in an informal process** to clarify what the individual needs and identify the appropriate reasonable accommodation. The employer may ask the individual questions that will enable it to make an informed decision about the request. This includes asking what type of reasonable accommodation is needed.

    There are extensive public and private resources to help employers and individuals with disabilities who are not familiar with possible accommodations. (See the Appendix to this guide for a resource directory to help identify reasonable accommodations.)

3. Must an employer provide the reasonable accommodation that the individual wants?

    **The employer may choose among reasonable accommodations as long as the chosen accommodation is effective (i.e., it removes the workplace barrier at issue)**. The employer may offer alternative

    suggestions for reasonable accommodations to remove the workplace barrier in question. If there are two possible reasonable accommodations, and one costs more or is more difficult to provide, the employer may choose the one that is less expensive or easier to provide, as long as it is effective.

4. [How quickly must an employer respond to a request for reasonable accommodation?](#)

    An employer should respond promptly to a request for reasonable accommodation. If the employer and the individual with a disability need to engage in an interactive process, this too should proceed as quickly as possible. Similarly, the employer should act promptly to provide the reasonable accommodation.

---

So, as you can clearly see, it is the Defendants, not the Plaintiffs, who must provide the accommodation. Defendants are allowed to discuss the issue with the Plaintiffs and find a reasonable accommodation that fits, but Plaintiff is not supposed to do all the work, like the Defendants suggest. The Defendants did not even *try* to meet the Plaintiff in the middle. Defendant cites Sixth Circuit case law, which may be persuasive on the Court, but I cite administrative regulations, which is *binding* on this court, via the *Chevron* precedent. Do I even *have* to cite precedent that states that binding authority always trumps conflicting persuasive authority?

## Conclusion

As you can clearly see, the Defendant simply expected me to do everything, to hand everything to him on a silver platter, when in fact the law requires the Defendant to meet the Plaintiff in the middle. The Defendant is not supposed to do all the work, but the Plaintiff is not supposed to, either. I attempted to get the Defendant to cooperate (a fact which I intend to prove at trial), but the Defendants refused. That is sufficient to support a cause of action.

Wherefore, premises considered, I respectfully pray that the Defendant's motion for summary judgment be denied.

/s/ David Stebbins
David Stebbins
1407 N Spring Rd, APT #5
Harrison, AR 72601
870-204-6024
stebbinsd@yahoo.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DAVID STEBBINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 10-3305-CV-S-RED |
| RELIABLE HEAT & AIR, LLC, et al., | ) |
| And | ) |
| | ) |
| RANDAL RICHARDSON, et al. | ) |
| | ) |
| Defendants | ) |

## CERTIFICATE FO SERVICE

    I, *pro se* Plaintiff David Stebbins, hereby certify that a true and correct copy of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment was served on Defendants by allowing them to view the notice of docket activity on the ECF, as allowed by the Local Rules.

/s/ David Stebbins
David Stebbins
1407 N Spring Rd, APT #5
Harrison, AR 72601
870-204-6024
stebbinsd@yahoo.com
